IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KEY CONTRACTING, INC.,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **CONTECH INTERNATIONAL, LLC,** *et al.*, <br><br> Defendants. | Case No. 3:17-cv-1599-SI <br><br> **ORDER** |

**Michael H. Simon, District Judge.**

Plaintiffs, Key Contracting, Inc. ("Key Contracting") and Key Equipment, LLC ("Key Equipment"), have sued Defendants, Contech International, LLC ("Contech"), Curb Dog Equipment, Inc. ("Curb Dog"), Robert D. Johnson, Stuart D. Johnson, and Darrell Ketch. As alleged in Plaintiffs' First Amended Complaint, Key Contracting performs concrete curb construction for commercial businesses. ECF 2 at 2, ¶ 4. Defendant Contech, which is now dissolved, was a manufacturer or distributor of "Slipform Concrete Curb Machines." ECF 2 at 2, ¶ 5. Defendant Curb Dog, which also is a manufacturer or distributor of these machines, is the successor to Contech and engages in the substantial continuation of Contech's business. *Id.* at ¶ 6. Defendants Robert Johnson and Stuart Johnson are the majority owners of Contech. *Id.*

at ¶ 7. Defendant Darrell Ketch is the majority owner, director, and officer of Defendant Curb Dog. *Id.* at ¶ 9.

On or about September 9, 2016, Plaintiffs purchased from Defendant Contech a PCM-6500 Slipform Concrete Curb Machine, commonly referred to as a "Phoenix Curb Machine." *Id*. at ¶ 11. When Plaintiffs purchased the Phoenix Curb Machine from Contech, Ketch was the sales representative employed by Contech. *Id*. at ¶ 8. This lawsuit involves a dispute that arises out of the sale of this Phoenix Curb Machine. Plaintiffs assert claims of fraudulent inducement, negligent misrepresentation, and breach of express warranty. Defendants move to dismiss, or in the alternative to stay proceedings and compel arbitration, on the ground that the dispute is subject to mandatory binding arbitration.

When Plaintiffs purchased the Phoenix Curb Machine at issue, the parties entered into a written sales agreement ("Agreement") that included the following relevant terms:

> 10. MISCELLANEOUS
>
> a. This Agreement, and all matters arising out of or relating to this agreement, shall be governed by the laws of the State of Oregon, County of Multnomah (exclusive of conflict of laws principles) . . . .
>
> b. Any legal action or proceeding relating to this Agreement shall be instituted solely in a state or federal court in Portland, Oregon. Company and Customer agree to submit to the jurisdiction of, and agree that venue is proper in, these courts in any such legal action or proceeding.
>
> . . . .
>
> 11. DISPUTE RESOLUTION
>
> a. Dispute resolution between Company and Customer: Company and Customer [a]gree that all claims, controversies and disputes between them (hereinafter collectively referred to as "Claims"), relating directly or indirectly to this Equipment Sales Agreement shall be resolved in accordance with the procedures set forth herein.

> b. Company and Customer agree that Claims between them shall be submitted to mediation either through: (1) the special mediation program administered by Arbitration Services of Portland Oregon or, (2) any other impartial private mediator(s) or program(s) so long as such services are available in Multnomah County, Oregon as selected by the Company.
>
> c. All Claims that have not been resolved by mediation, or otherwise, shall be submitted to final and binding private arbitration in accordance with Oregon Laws. . . . By consenting to this provision Company and Customer are agreeing that disputes arising under this Agreement shall be heard and decided by one or more neutral arbitrators and Company and Customer are giving up the right to have the matter tried by judge or jury. The right to appeal an arbitration decision is limited under Oregon law.

ECF 25 at 13, 15.

Under the Federal Arbitration Act ("FAA"), a provision in "a contract evidencing a transaction involving commerce" that agrees to settle disputes arising out of that transaction through arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Involving commerce" is defined broadly and neither party disputes that it covers the Agreement at issue in this case. *See Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995).

The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S 346, 349 (2008). As such, arbitration agreements must be "rigorously enforce[d]." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "[A] district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). "[I]n deciding whether to compel arbitration, a court must determine . . . (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

(citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)). The policy favoring arbitration "is at bottom a policy guaranteeing the enforcement of private contractual arrangements. Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Republic of Nicaragua*, 937 F.2d at 475 (citations and quotation marks omitted).

Plaintiffs argue that there is no valid agreement to arbitrate covering this dispute because there is ambiguity created by Sections 10(b) and 11(b) of the Agreement. Plaintiffs argue that this ambiguity should be resolved in Plaintiffs' favor because compelling arbitration would be inconsistent with the reasonable intention of the parties at the time of contracting.

As an initial matter, the parties dispute how the Court should determine whether Oregon law or the FAA governs the Court's decision on the question of arbitrability. The parties ultimately agree, however—for different reasons—that Oregon law applies to the question of arbitrability.

The leading Oregon case on contract interpretation is *Yogman v. Parrott*, 325 Or. 358 (1997), which established a three-step process for interpreting a disputed contractual provision. First, the court must determine whether, as a matter of law, the relevant provision is ambiguous. *Yogman*, 325 Or. at 361. "Ambiguity means that a provision, or multiple provisions read together, have no definite meaning or are capable of more than one sensible and reasonable interpretation." *Am. Wholesale Prod. v. Allstate Ins. Co.*, 288 Or. App. 418, 424 (2017). "The court must, if possible, construe the contract so as to give effect to all of its provisions." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). The analysis ends if the meaning of the provision is clear from the text and context of the contract. *Id.* at 379-80. If the provision is ambiguous, however, the court proceeds to the second step. *Yogman*, 325 Or. at 363. At the

second step, the court examines extrinsic evidence of the contracting parties' intent and construes the contractual provision consistent with that intent, if such a resolution can be determined. *Id.* If, after examining extrinsic evidence, the contract is still ambiguous, the court applies appropriate maxims of construction at the third step. *Yogman*, 326 Or. at 364.

Plaintiffs argue that Sections 10(b) and 11(b), when read together, are ambiguous. Section 10(b) provides that "[a]ny legal action or proceeding relating to [the] Agreement shall be instituted solely in state or federal court in Portland, Oregon." Section 11 provides that all "claims, controversies and disputes" between the parties "relating directly or indirectly to [the Agreement]" "shall be submitted to mediation" or, if not resolved by mediation, to "final and binding private arbitration." Plaintiffs argue that "claims," as used in Section 11, is narrower than the term "legal action" used in Section 10. Plaintiffs argue that had the dispute been about the terms of payment or a warranty issue, then the term "claim" would appropriately describe the dispute, but that the term "legal action" more appropriately describes the dispute now before the Court, in which, Plaintiffs argue, only one cause of action arises directly out of the substance of the Agreement itself. Plaintiffs also argue that the "complex relationship between the individual entity Defendants, both active and dissolved," counsels in favor of using the term "legal action" to describe the instant case.

The Court is not persuaded that Sections 10 and 11, taken together, contain any material ambiguity. Section 11 provides that "claims, controversies, and disputes" that relate either directly or indirectly to the Agreement "shall be resolved" by mediation or arbitration, as described in the Agreement. Although Plaintiffs argue that only one of their causes of actions arises "directly" out of the Agreement itself, Section 11 applies equally to claims, controversies, and disputes arising "directly or indirectly" out of the Agreement. Plaintiffs' claims all relate

to—and this dispute concerns—Defendants' sale of the Phoenix Curb Machine. As such, the dispute relates "directly or indirectly" to the Agreement. Thus, this matter is inescapably a claim, controversy, or dispute relating to the Agreement and is therefore subject to mandatory, binding arbitration under Section 11.

Section 10, which provides that "legal actions" relating to the Agreement shall be resolved in a court in Oregon, does not create the sort of material ambiguity that Plaintiffs assert it does. Section 10, rather, merely clarifies that, to the extent a legal action in court is needed to resolve an issue relating to the Agreement, that legal action must be brought in Oregon and in no other state. As Defendants note, certain issues must be resolved by a court, rather than an arbitrator. For example, a disagreement about whether an arbitration agreement was in fact made—as is now before the Court—must generally be resolved by a court. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (noting that determinations of arbitrability are generally decided by a court, but may be expressly delegated to an arbitrator). As such, it makes sense for the parties to an agreement to agree both that claims arising out of the agreement be submitted to arbitration and that, to the extent court actions are required, those be brought in a specific venue.

Finally, Plaintiffs suggest that Plaintiffs' common law claims should be excluded from arbitration because they are legal causes of action for the revocation of a contract. In support of this conclusion, Plaintiffs rely upon Oregon Revised Statutes ("ORS") § 36.620, which provides in relevant part: "[W]here grounds 'exist at law or in equity for the revocation of any contract,' courts may decline to enforce arbitration agreements." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (quoting 9 U.S.C. § 2). This statute is known as a "saving clause." *See generally Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947 (9th Cir. 2012). "This saving clause

permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks omitted). These defenses are "grounded in state contract law." *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 892 (9th Cir. 2002).

Plaintiffs allege fraudulent inducement in the sale of the Phoenix Curb Machine. Plaintiffs have not, however, alleged that the arbitration agreement *itself* was fraudulently induced. "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate," because "an arbitration provision is severable from the remainder of the contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010) (describing the two types of validity challenges under § 2, one being a challenge specifically to the arbitration agreement, and the other being to the contract as a whole, and noting that "only the first type of challenge is relevant to a court's determination whether the arbitration agreement at issue is enforceable"). Thus, this is not a ground on which to refuse to enforce the arbitration agreement.

The Agreement was entered into by Contech and Key Equipment, and thus clearly applies to Contech as well as to Stuart Johnson and Robert Johnson, who were the majority owners and managers of Contech. Defendants Curb Dog and Ketch also seek to rely on the Agreement's arbitration provision. "[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *see also Sacks v. Dietrich*, 663 F.3d 1065, 1070 (9th Cir. 2011) (citing *Letizia* for this proposition). "Among these principles are 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1045 (9th Cir. 2009) (quotation marks omitted). In *Mundi*, the Ninth

Circuit denied a nonsignatory's motion to compel arbitration because the dispute between the plaintiff and the nonsignatory defendant was outside the scope of the arbitration agreement the defendant sought to enforce. *Id*. The court also refused to compel arbitration on the basis of equitable estoppel because the claim was not "intertwined with the contract providing for arbitration," did not "arise out of" or "relate directly to" that contract, and did not require examination of that contract." *Id*. at 1047.

In the pending case, Plaintiffs allege that Curb Dog is the successor of Contech as distributor or manufacturer of the Phoenix Curb Machine and is engaged in the substantial continuation of Contech's business. Plaintiffs' claims against Curb Dog and Ketch rely upon these Defendants' relationship with Contech, are intertwined with the Agreement, and arise out of that Agreement. Defendants Curb Dog and Ketch therefore may rely on the Agreement's arbitration provision to compel arbitration of Plaintiffs' claims against them.

Defendants' motions to dismiss or, in the alternative to stay proceedings and compel arbitration (ECF 20, 26), are GRANTED. Plaintiffs' claims are dismissed without prejudice.

**IT IS SO ORDERED.**

DATED this 7th day of May, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge